UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALLYSON HENRY, | ) |
|     Plaintiff, | ) |
| v. | ) CASE NO. C05-1510RSM |
| IAC/INTERACTIVE GROUP and EXPEDIA, INC., | ) ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION |
|     Defendants. | ) |

**INTRODUCTION**

This matter comes before the Court on defendants' motion for preliminary injunction. (#67). Defendants argue that a preliminary injunction is necessary in this case because it will put the parties at the last uncontested *status quo* in regard to the disputed property, they are likely to succeed on their counterclaims, and they suffer continuous harm every day that their property is not in their exclusive control. Defendants also assert that this will have no irreversible effects on plaintiff because Blank Law & Technology, the forensic firm, maintains complete images of all property in its original condition which can be returned to plaintiff in the event that defendants lose this issue at trial.

Plaintiff responds that defendants have failed to meet the standard for a preliminary injunction. Plaintiff also argues that defendants' status quo argument is without merit because they allowed plaintiff access to the documents while she was on leave, defendants do not have

ORDER
PAGE – 1

"clean hands," and the balance of hardships tips in her favor. Finally, plaintiff argues that the Court should require a bond of $200,000 if injunctive relief is granted.

For the reasons set forth below, the Court disagrees with plaintiff, and GRANTS defendants' motion for a preliminary injunction.

## DISCUSSION

**A. Background**

Defendant Expedia is a Washington State corporation with its headquarters in Bellevue, WA. It provides online travel services for individuals and small businesses. Defendant IAC/InterActiveCorp ("IAC") owns Expedia.

Expedia was originally the travel division of Microsoft. In 1999, Microsoft turned Expedia into an independent privately held company, retaining a majority interest. In 2002, Microsoft sold its interest to IAC. In 2003, IAC acquired the remaining interest. In 2005, IAC launched Expedia into a separate, publicly-traded company. As part of that launch, IAC moved all of its other travel-related services, i.e., Hotels.com and Hotwire, into the new Expedia.

Plaintiff Allyson Henry is an African-American woman, and a former Expedia employee. She began working for the company in 1995 while it was still the travel division of Microsoft. At some point in 2001, Ms. Henry was promoted to Vice President of International Product Development, as which she led a team of approximately 60 developers in providing the technical platform for all of IAC/Expedia's international products.

At some point after 2001, plaintiff came under the supervision of a Simon Breakwell, IAC/Expedia's manager for international business. Plaintiff believes that Mr. Breakwell was uncomfortable with a black, female manager, and did not support her in her employment position. She asserts that because of Mr. Breakwell's bias, defendants no longer supported her job growth and no longer moved her along the promotion track she had previously been part of, despite the fact that she continued to obtain exemplary results in her division. During the same time period, she noted that white male managers with lesser or comparable qualifications were

promoted.

Plaintiff made complaints of discrimination internally to her managers and to the human resources department. However, she alleges that her complaints were completely ignored. In November of 2003, defendants informed plaintiff that she would be removed from her position as Vice President of International Product Development, and would be allowed to transfer to another open position within IAC or Expedia if she could identify one. Defendants gave plaintiff a paid leave of absence from November of 2003 until November 18, 2004, to seek another position inside or outside Expedia.

Plaintiff took her Expedia-issued laptop computer to her residence when she took her leave of absence. She continued to receive e-mail communication via the Expedia e-mail server, as well as e-mail via a personal e-mail account. She also maintained a connection to the Expedia computer server, with access to network documents, for at least some part of her leave of absence.

In July of 2004, plaintiff apparently retained Ms. Barnard, her current counsel, of Schwerin Campbell Barnard LLP. At that time, plaintiff relayed information to Ms. Barnard pertaining to her discrimination claims, including providing copies of some Expedia e-mail and documents. Counsel avows that plaintiff took precautions at that time not to disclose information that she possessed that was attorney-client privileged or work product protected as to defendants.

Also during her leave of absence, plaintiff continued to complain to defendants that she had been removed from her position for discriminatory reasons. On or about October 26, 2004, she met with Expedia's CEO to discuss the alleged discrimination. He apparently referred plaintiff's complaints to legal counsel. As a result, plaintiff received a letter retroactively terminating her employment as of October 1, 2004. Plaintiff was also ordered to have no further contact with defendants, unless it was through their legal counsel. After plaintiff noted that she was still on defendants' payroll, and had been paid after October 1, 2004, defendants withdrew

ORDER
PAGE – 3

the retroactive termination, and made the termination effective November 19, 2004. Defendants did not use an exit process and did not request her to return her Expedia-issued laptop computer.

On March 11, 2005, plaintiff filed a discrimination law suit against defendants in King County Superior Court. Defendants subsequently removed the case to this Court.

On May 4, 2005, plaintiff's counsel apparently orally disclosed to defendants that she had a large volume of Expedia e-mail on multiple computers, and that she planned to review and produce them. She apparently again discussed the computers and documents on June 22 and July 6. On July 11, in response to an interrogatory, plaintiff stated that she had retained Expedia e-mail.

Meanwhile, in June of 2005, plaintiff delivered three laptop computers and an external hard drive to her counsel's offices. A member of plaintiff's counsel's IT department archived and copied certain files from the computers and hard drive, but counsel asserts that she did not begin to look at any e-mail at that time.

In early July of 2005, plaintiff's counsel began to sort the e-mail documents using certain keywords, in an attempt to screen out any potentially privileged communications. In mid-August, plaintiff's counsel hired a legal assistant to begin reviewing the e-mail in preparation for responding to defendants' discovery requests. She apparently was instructed to sort the e-mail using certain keywords and proper names, and to move potentially privileged e-mails to a separate folder that counsel would not review. She apparently conducted this sort from August 23, 2005 to October 5, 2005. Plaintiff's counsel also obtained another attorney to assist with the sort. He conducted his portion of the sort from August 25, 2005 to September 13, 2005.

On August 24 and 30, plaintiff's counsel explained to defendants' counsel that there were over 30,000 e-mail communications that they were attempting to segregate. On September 1, 2005, plaintiff apparently produced 4,200 e-mails to defendants. On October 6, 7 and 11, counsel again met to discuss the sorting and review process. Defendants assert that it was not

until the October discussions that they learned that plaintiff possesses tens of thousands of Expedia documents, an Expedia-issued laptop, and an Expedia-issued e-mail account. Defendants promptly demanded the return of the documents and computer, as well as plaintiff's two personal computers. Defendants also demanded that plaintiff, her counsel, and any other person to whom information had been disseminated relinquish possession of all copies of Expedia e-mail messages and other documents, and provide written declarations regarding their access of, use, and any further dissemination of these documents.

Plaintiff's counsel ultimately turned over plaintiff's two personal computers, along with numerous documents, computer disks and CDs, and four other computers, to an agreed upon forensics firm. However, defendants believe that plaintiff's counsel has retained copies of numerous other computer files and documents, including those that may contain privileged, confidential and proprietary documents. Accordingly, defendants filed a motion for temporary restraining order and preliminary injunction and motion to disqualify,[1] and noted depositions of plaintiff's counsel's IT representative and a representative of her law firm that is best able to answer questions about the sorting and review process. In response, plaintiff filed a motion to quash the deposition subpoenas, which this Court subsequently denied. A representative from plaintiff's counsel's IT department was deposed on January 5, 2006.

Defendants continue to assert that they have been unable to access and review their own documents due to plaintiff's refusal to cooperate, and her insufficient instructions to the forensic firm. Accordingly, they now seek this Court's intervention.

**B. Standard of Review for Preliminary Injunctions**

To obtain a preliminary injunction, defendants must demonstrate either: (1) probable success on the merits and the possibility of irreparable harm; or (2) that serious questions have

---

[1] Defendants have since withdrawn the portion of their motion asking for a temporary restraining order, believing it to be unnecessary, and ask only that the Court issue a preliminary injunction. (Dkt. #37).

ORDER
PAGE – 5

been raised and the balance of hardships tips in their favor. *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001). The Ninth Circuit Court of Appeals has explained that each of these two prongs "requires an examination of both the potential merits of the asserted claims and the harm or hardships faced by the parties. We have held that 'these two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases.' Additionally, 'in cases where the public interest is involved, the district court must also examine whether the public interest favors the plaintiff.'" *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 965 (9th Cir. 2002) (citations omitted).

Accordingly, the Court will discuss these elements in turn below.

1.  Likelihood of Success on the Merits

Defendants have filed four counterclaims against plaintiff – misappropriation of trade secrets, conversion, breach of duty of loyalty, and breach of contract – and ultimately seek a permanent injunction requiring plaintiff to return all of defendants' property. The Court will begin by addressing the breach of contract counterclaim.

Defendants assert that plaintiff's employment contract expressly provides that plaintiff was prohibited from disclosing or using for any purpose other than in the course of her employment confidential or proprietary information or trade secrets. Her employment contract further provides that upon termination of her employment, she was required to return property and equipment belonging to the company, including her computer, e-mail and documents. Plaintiff's contract further states that all materials, data and information stored on or transmitted by a company computer remains the property of defendants. Thus, defendants argue that plaintiff breached her contract by taking, and not immediately returning her computer and documents when her employment was terminated.

Plaintiff argues that, in the same employment contract, there is a provision that contains a requirement that she be informed in writing of any alleged breach of the agreement. Plaintiff

ORDER
PAGE – 6

would then have 30 days to cure any breach. Plaintiff argues that defendants did not exercise that contract provision, and therefore, have waived their counterclaim. Plaintiff further argues that any breach has been cured by tender of all contested materials to Blank Law & Technology. Finally, plaintiff argues that disclosure of the documents and information to her counsel is not improper and does not constitute a breach. The Court is not persuaded.

In order to establish a breach of contract claim, a party must establish the existence of a contract, the breach of that contract by another party, and the damages incurred as a result of the breach. *Lehrer v. Dept. of Social and Health Serv.*, 101 Wn. App. 509, 516 (2000). Defendants have produced a copy of plaintiff's employment agreement, and there is no dispute that she signed her agreement voluntarily. By so signing, she acknowledged that disclosure of defendants' documents to anyone for any reason is prohibited except for use by the employee in the course of her employment. Plaintiff violated that provision by providing more than 90,000 documents to her attorneys both before and after her employment was terminated. Many of those documents contained confidential company information, and many of the documents were attorney-client privileged. Furthermore, many of the documents appear to have little or no relevance to plaintiff's employment discrimination claims.

Second, the contract explicitly requires plaintiff to return the company's property upon termination of her employment. That requirement is not conditioned on any other contract provision, such as the cure provision.

Finally, the Court is not persuaded that any breach has been cured by tendering the disputed documents to Blank & Associates. Even though the disputed property is now in place at a "neutral" forensic firm, the fact remains that people, other than defendants, have access to, and control over, documents and computers that never should have been provided by plaintiff to her counsel in the first place.

Accordingly, the Court finds that defendants have a high likelihood of success on the merits of this counterclaim, and that is enough to meet the first prong of the preliminary

ORDER
PAGE – 7

injunction standard. Because the Court finds that a likelihood of success on this counterclaim satisfies the first prong of the preliminary injunction standard, it will not address the likelihood of success on defendants' remaining counterclaims.

2. Irreparable Harm

As for the issue of irreparable harm, the Court agrees with defendants that irreparable harm will continue if the documents are not returned to them. Allowing plaintiff and her counsel to continue to have access to the documents increases the risk that they will review privileged documents. Any documents to which plaintiff is entitled can be produced through the normal channels of discovery. There is also risk of spoliation of evidence if defendants are not allowed to receive all of their property back so that they may review all of the documents that were retained.

The Court is not persuaded that plaintiff will suffer any harm from the entry of a preliminary injunction in this case. For instance, plaintiff argues that if all of the property is transferred to defendants, there is a risk that a document could be accidentally deleted and that plaintiff may never be able to access it again. However, the Court reminds plaintiff that those risks are present in any litigation. Indeed, in the normal course of many litigations, there are instances where documents are destroyed or otherwise "lost" during the discovery period. Plaintiff has an advantage in this case. She has presumably seen all 90,000 plus documents that are at issue here. Thus, if her counsel now makes a discovery request for certain of those documents, and if defendants do not produce the documents claiming that they don't exist, plaintiff will be able to advise counsel that she has seen such documents and knows that they do exist and where they should be able to be located on the computer.

Accordingly, the Court finds that defendants have met the second prong of the preliminary injunction standard.

2. Bond

Because the Court will impose a preliminary injunction in this case, there is a need to

address the issue of defendants' posting of a bond.  However, at the parties' request, the Court is reserving the bond issue until the parties have been able to discuss the scope of the preliminary injunction with Blank Law & Technology.  The parties will then submit a proposed bond amount to this Court.

## **CONCLUSION**

The Court, having considered defendants' Motion for Preliminary Injunction (Dkt. #67), plaintiffs' Response (Dkt. #72), defendants' Reply (Dkt. #78), the declarations in support and opposition thereto, the oral arguments presented on February 9, 2006 in this Court, and the remainder of the record, hereby finds and ORDERS:

(1) Defendants' Motion for a Preliminary Injunction (Dkt. #67) is GRANTED.  The Court imposes the following injunctive relief:

a.  Expedia's laptop and all Expedia documents ("Expedia property"), except for those documents produced through proper discovery thus far in the litigation, shall be returned to Expedia immediately, after Blank Law & Technology P.S. ("Blank") removes Ms. Henry's privileged documents, at her expense.  For purposes of this Order, documents are determined to be Ms. Henry's privileged documents if they comprise the substance of messages that were sent or received by anyone at Schwerin Campbell Barnard LLP, anyone at Vedder Price Kaufman & Kammholz, anyone at Ahrens & DeAngeli, Suzanne Thomas, or Curt Chapman.  If any of Ms. Henry's privileged documents attach or summarize Expedia documents, the attachment and/or summary shall be permanently removed, and Blank shall identify the offending document and certify to Expedia the permanent removal of same.   As soon as possible after such production, Blank shall provide Expedia with a privilege log identifying all documents that are not produced to Expedia.[2]

b.  Pending trial on the merits, Ms. Henry and her counsel are restrained from accessing or

---

[2] In the event that Blank is unwilling or unable to perform any of the services ordered, Expedia shall arrange for another computer forensics firm to perform such services.

ORDER
PAGE – 9

1  controlling access to any Expedia property, or documents derived therefrom, in the custody of
2  Blank.
3      (2) Defendants shall post a security bond with this Court in an amount yet to be
4  determined. The parties shall submit a proposed bond amount no later than five business days
5  from the date of this Order. This preliminary injunction shall not become effective until the
6  posting of such bond.
7      (3) The Clerk shall send a copy of this Order to all counsel of record.
8      DATED this __14__ day of February 2006.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER
PAGE – 10