UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALLYSON HENRY,<br><br>Plaintiff,<br><br>v.<br><br>IAC/INTERACTIVE GROUP and EXPEDIA, INC.,<br><br>Defendants. | CASE NO. C05-1510RSM<br><br>ORDER DENYING MOTION FOR SUMMARY JUDGMENT |

**INTRODUCTION**

This matter comes before the Court on defendant IAC/Interactive Group's motion for summary judgment. (#111). Defendant argues that there is no basis for liability on any of plaintiff's claims because IAC was not her actual employer, nor was IAC a "single" employer for purposes of this action. Plaintiff responds that the record is replete with evidence demonstrating that IAC was plaintiff's employer under the "joint employer," "single employer," or both well-established Title VII theories of liability, and therefore, summary judgment in favor of defendant is not appropriate. For the reasons set forth below, the Court agrees in part with plaintiff and DENIES defendant's motion for summary judgment.

**DISCUSSION**

**A. Background**

This action arises from plaintiff's termination of employment with defendant in November

of 2004. Defendant Expedia is a Washington State corporation with its headquarters in Bellevue, WA. It provides online travel services for individuals and small businesses. Defendant IAC/InterActiveCorp ("IAC") owns Expedia.

Expedia was originally the travel division of Microsoft. In 1999, Microsoft turned Expedia into an independent privately held company, retaining a majority interest. In 2002, Microsoft sold its interest to IAC. In 2003, IAC acquired the remaining interest. In 2005, IAC launched Expedia into a separate, publicly-traded company. As part of that launch, IAC moved all of its other travel-related services, i.e. Hotels.com and Hotwire, into the new Expedia.

Plaintiff Allyson Henry is an African-American woman, and a former Expedia employee. She began working for the company in 1995 while it was still the travel division of Microsoft. At some point in 2001, Ms. Henry was promoted to Vice President of International Product Development, as such she led a team of approximately 60 developers in providing the technical platform for all of IAC/Expedia's international products.

Some time later after 2001, plaintiff came under the supervision of Simon Breakwell, IAC/Expedia's manager for international business. Plaintiff believes that Mr. Breakwell was uncomfortable with a black, female manager, and did not support her in her employment position. She asserts that because of Mr. Breakwell's bias, defendants no longer supported her job growth and no longer moved her along the promotion track she had previously been part of, despite the fact that she continued to obtain exemplary results in her division. During the same time period, she noted that white male managers with lesser or comparable qualifications were promoted.

Plaintiff made complaints of discrimination internally to her managers and to the human resources department. However, she alleges that her complaints were completely ignored. In November of 2003, defendants informed plaintiff that she would be removed from her position as Vice President of International Product Development, and would be allowed to transfer to another open position within IAC or Expedia if she could identify one. Defendants gave plaintiff

a paid leave of absence from November of 2003 until November 18, 2004, to seek another position inside or outside Expedia.

During her leave of absence, plaintiff continued to complain to defendants that she had been removed from her position for discriminatory reasons. On or about October 26, 2004, she met with Expedia's CEO to discuss the alleged discrimination. He apparently referred plaintiff's complaints to legal counsel. As a result, plaintiff received a letter retroactively terminating her employment as of October 1, 2004. Plaintiff was also ordered to have no further contact with defendants, unless it was through their legal counsel. After plaintiff noted that she was still on defendants' payroll, and had been paid after October 1, 2004, defendants withdrew the retroactive termination, and made the termination effective November 19, 2004.

On March 11, 2005, plaintiff filed a discrimination law suit against defendants in King County Superior Court. Defendants subsequently removed the case to this Court.

**B. Summary Judgment Standard**

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The Court must draw all reasonable inferences in favor of the non-moving party. *See F.D.I.C. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds,* 512 U.S. 79 (1994). The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial. *See Anderson*, 477 U.S. at 257. Mere disagreement, or the bald assertion that a genuine issue of material fact exists, no longer precludes the use of summary judgment. *See California Architectural Bldg. Prods., Inc., v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987).

Genuine factual issues are those for which the evidence is such that "a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248. Material facts are

those which might affect the outcome of the suit under governing law. *See id.* In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *O'Melveny & Meyers*, 969 F.2d at 747). Furthermore, conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment. *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 60 F. 3d 337, 345 (9th Cir. 1995). Similarly, hearsay evidence may not be considered in deciding whether material facts are at issue in summary judgment motions. *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 345 (9th Cir. 1995); *Blair Foods, Inc. v. Ranchers Cotton Oil,* 610 F. 2d 665, 667 (9th Cir. 1980).

**C. Motion to Strike**

Plaintiff has moved to strike certain evidence presented for the first time in defendant's Reply brief.[1] Specifically, plaintiff asks the Court to strike two declarations attached to the Declaration of Kandis Baldwin, as well as Expedia organizational charts, IAC's Amended Supplemental written discovery responses, and a court order and two briefs from another case. In addition, plaintiff asks the Court to strike unsubstantiated claims of fact.

Plaintiff correctly asserts that a moving party cannot submit new information as part of its Reply if such evidence attempts to introduce new facts or different legal arguments that were not presented in the motion itself. However, the Court does not find that defendant has introduced such evidence here. Indeed, in its Reply, defendant continues to argue its affirmative defense that it is not a "single employer" for Title VII purposes, and merely presents additional evidence in support of that argument. Therefore, while the Court finds some of the evidence problematic for other reasons, as further discussed below, it declines to strike the evidence from

[1] Defendant has also moved to strike the overlength portion of plaintiff's Rule 56(f) motion. However, because the Court will not consider that motion, the Court finds defendant's motion to strike moot.

consideration.

In addition, the Court declines to strike "unsubstantiated claims of fact from the record" as plaintiff requests. The Court is well aware of what evidence is admissible on summary judgment, and the standard of review of such evidence. The Court is able to determine what arguments are properly supported, and will then decide if any of those arguments and supporting evidence raise a genuine issue of material fact. Accordingly, it is not necessary for the Court to strike defendant's arguments from its Reply brief.

**D. Single Employer Doctrine/Integrated Enterprise Theory**

In the Ninth Circuit, courts look at factors typically utilized by the NLRB in labor cases to determine whether a parent and subsidiary may be considered a single employer in Title VII actions. As the Ninth Circuit explained in *Childs v. Local 18*, 719 F.2d 1379, 1382 (9th Cir. 1983),

> In *Baker v. Stuart Broadcasting Co.*, 560 F.2d 389 (8th Cir.1977), the Eighth Circuit applied a four-prong test, used by the NLRB in labor cases, to determine whether two employing entities constitute a single employer for the purposes of jurisdiction under Title VII.
>
> The standard to be employed to determine whether consolidation of separate [employing] entities is proper are the standards promulgated by the National Labor Relations Board: (1) inter-relation of operations, (2) common management, (3) centralized control of labor relations; and (4) common ownership or financial control.

*Childs*, 719 F.2d at 1382 (citations omitted); *see also Ruggiero v. AMR Corp.*, 1995 U.S. Dist. LEXIS 22149, *16-17 (N.D. Cal. 1995). The First, Sixth and Eighth Circuits also utilize these factors when analyzing the single employer doctrine. *See York v. Tennessee Crushed Stone Assoc.*, 684 F.2d 360, 362 (6th Cir.1982); *Mas Marques v. Digital Equipment Corp.*, 637 F.2d 24, 27 (1st Cir.1980); *Williams v. Evangelical Retirement Homes of Greater St. Louis*, 594 F.2d 701, 703 (8th Cir.1979). Courts sometimes refer to the single employer doctrine as the integrated enterprise theory, but apply the same factors. *Ruggiero*, 1995 U.S. Dist. LEXIS 22149 at *16. Similarly, courts examining discrimination claims under the Age Discrimination in

Employment Act ("ADEA") apply the same analysis. *See Ritzer v. Gerovicap Pharmaceutical Corp.*, 162 F.R.D. 642, 645 (D. Nev. 1995).

The NLRB has highlighted the importance of the first three of these factors, as well as the presence of control of labor relations. *Sakrete, Inc. v. N.L.R.B.*, 332 F.2d 902, 905 n. 4 (9th Cir. 1964), *cert. denied*, 379 U.S. 961 (1965). However, no single factor is controlling, nor need all criteria be present. *N.L.R.B. v. Welcome-American Fertilizer Co.*, 443 F.2d 19, 21 (9th Cir. 1971). "Single employer status ultimately depends on 'all the circumstances of the case' and is characterized as an absence of an 'arm's length relationship found among unintegrated companies.'" *NLRB v. Lantz*, 607 F.2d 290, 295 (9th Cir. 1979) (citations omitted). Courts have noted that "[u]ltimately the policy underlying the single employer doctrine [also referred to as the integrated enterprise theory] is the fairness of imposing liability for labor infractions where two nominally independent entities do not act under an arm's length relationship." *Bowoto v. ChevronTexaco Corp.*, 312 F. Supp. 2d 1229, 1237-1238 (D. Cal. 2004) (internal quotation omitted).

Parties often mistake the single employer doctrine with the joint employer doctrine. However, these two doctrines are distinct from one another. As the District Court of Oregon explained:

> A 'single employer' relationship exists where two nominally separate entities are actually part of a single integrated enterprise so that, for all purposes, there is in fact only a 'single employer.' The question in the 'single employer' situation, then, is whether the two nominally independent enterprises in reality, constitute only one integrated enterprise.
>
> The single employer standard is relevant when 'separate corporations are not what they appear to be, that in truth they are but divisions or departments of a single enterprise.'
>
> . . .
>
> In contrast, a joint employer relationship does not involve a single integrated enterprise. Rather the joint employer concept assumes that the employers are what they appear to be – separate legal entities that have merely chosen to co-

> determine important matters governing the employer-employee relationship.
>
> 'In "joint employer" situations no finding of a lack of arm's length transaction or unity of control or ownership is required, as in 'single employer' cases. . . It is rather a matter of determining which of two, or whether both [entities] control, in the capacity of employer, the labor relations of a given group of workers.' The basis of the finding is simply that one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer.

*United States Football League Players Assoc. v. United States Football League*, 650 F. Supp. 12, 14-15 (D. Or. 1986) (citations omitted). In the instant case, defendant has only addressed the single employer doctrine in its motion for summary judgment. Accordingly, this Court will only examine that doctrine.

Defendant argues that IAC and Expedia did not have interrelated operations or activities, common management or common ownership or financial control. Defendant provides evidence demonstrating that Expedia and IAC did not have common supervisory employees involved in the operations of Expedia, that Expedia had separate audited financial statements and Expedia ran the day-to-day business of the company without interference from IAC. However, defendant's own discovery responses undermine its arguments, and troubles the Court. For example, plaintiff has asserted that Erik Blachford, then President and CEO of Expedia and IAC Travel, was an IAC employee directly involved with plaintiff's termination. Plaintiff supports that argument by citing to IAC's second answers to interrogatories saying as much. (Dkt. #122, Ex. 7). Defendant responds by citing to its Amended and Supplemental Responses to Plaintiff's First Interrogatories and Requests for Production to IAC, which replace and, by their own admission, "materially changed the very responses Plaintiff cites." (Dkt. #135 at 3 n.3). Notwithstanding that defendant has failed to explain why its representatives have propounded two sets of sworn discovery responses that directly contradict each other, the Court finds that these inconsistent responses also create an issue of material fact for the jury.

In addition, plaintiff also produces evidence that IAC's corporate mission specifically stated its intent to integrate the operations, as well as the accounting, financial control, management information, technology, human resources and other administrative systems of its subsidiaries with IAC. (Dkt. #122, Ex. 29). Furthermore, when IAC acquired a controlling interest in Expedia in 2002, IAC expanded Expedia's Board of Directors, named IAC Chairman Barry Diller as the Chairman of the Board, and named six other IAC executives or board members to the Expedia board.

Defendant also argues that IAC did not control the labor relations of Expedia, and therefore, cannot be considered an employer of plaintiff. Defendant produces evidence that Expedia maintained its own employment policies, paid its employees directly, and evaluated employees without the involvement of IAC. In addition, defendant demonstrates that Expedia employed its own human resources representatives, and hired and fired its own employees without the approval of anyone at IAC.

However, plaintiff has produced evidence that IAC set the compensation of Expedia's executives, mandated the form of employment contracts, required compliance with IAC's HR Policy Manual, and required the approval of salary increases and promotions. Plaintiff also produces evidence that IAC tracked its employees across brands through a single Talent Sheet for the purpose of moving employees from one company to another. Finally, IAC admits that Mr. Blachford, former Vice President of Human Resources for IAC Karla Packer and IAC Assistant General Counsel Edward Ferguson all were informed and/or participated in the severance offer made at the conclusion of plaintiff's leave of absence.

After viewing this evidence in the light most favorable to plaintiff, the Court finds that plaintiff has raised genuine issues of material fact with respect to whether IAC is an employer of plaintiff for Title VII purposes. Because defendant did not move for summary judgment on the "joint employer" theory, the Court need not address plaintiff's arguments with respect to that

theory. In addition, because the Court finds that genuine issues of material fact have been raised, the Court finds plaintiff's request for Rule 56(f) relief to be moot.

**CONCLUSION**

The Court, having considered defendant's Motion for Summary Judgment, plaintiffs' Response, plaintiff's Rule 56(f) Motion, defendant's Opposition to the Rule 56(f) Motion, defendant's Reply is support of its Motion for Summary Judgment, plaintiff's Sur-Reply, plaintiff's Reply in Support of her Rule 56(f) Motion, the declarations in support and opposition thereto, and the remainder of the record, hereby finds and ORDERS:

(1) Defendant's Motion for Summary Judgment (Dkt. #111) is DENIED.

(2) Plaintiff's Rule 56(f) Motion (Dkt. #119) is DENIED AS MOOT.

(3) The Clerk shall send a copy of this Order to all counsel of record.

DATED this 2nd day of November, 2006.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE